UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:22-cv-61070-KMM

MICHAEL DAVIS, *individually and*
*on behalf of all others similarly situated*,

      Plaintiffs,

v.

PROFESSIONAL PARKING
MANAGEMENT CORPORATION, and
YSA ARM LLC, d/b/a OXYGEN XL,

      Defendants.

_____/

## ORDER

THIS CAUSE came before the Court upon Defendants Professional Parking Management Corporation ("PPM") and YSA Arm, LLC d/b/a Oxygen XL ("Oxygen")'s Motion to Dismiss Class Action Complaint with Prejudice.  ("Motion" or "Mot.") (ECF No. 13).  Plaintiff Michael Davis filed a timely response, ("Resp.") (ECF No. 23), and Defendants filed a reply, (ECF No. 26).  For the reasons discussed herein, Defendants' Motion (ECF No. 13) is GRANTED, and Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.

## I.       FACTUAL BACKGROUND[1]

On November 26, 2021, Plaintiff parked his vehicle at 330 Hayes Street, Hollywood, Florida, in a parking lot managed by PPM.  Compl. ¶ 20.  One week later, PPM issued a "Parking Charge Notice" to Plaintiff which imposed an $85.00 "parking charge" for Plaintiff's time in the lot.  *Id.* ¶¶ 21–22.  Plaintiff chose not to pay the parking charge because "it was Plaintiff's

_____

[1]  The following facts are taken from the Complaint ("Compl.") (ECF No. 1-1) and are accepted as true for purposes of ruling on this Motion to Dismiss.  *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022).

understanding that [Broward County] Ordinance No. 20-164.2 specifically prohibited [PPM] from imposing such charges." *Id.* ¶¶ 10–13, 23.  Then, on March 28, 2022, Plaintiff received a debt collection letter, attempting to collect on the same debt, from Defendant Oxygen (a collector for PPM).  *See id.* ¶¶ 25, 52.  While Plaintiff disputed the debt, he does not aver that he ever made a payment to PPM or Oxygen in response to the collection letter.  *Id.* ¶ 26; *see generally* Compl.

On April 26, 2022, Plaintiff filed his Complaint in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County.  *Id.* ¶ 1.  Therein, Plaintiff asserted three causes of action: (1) a claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") against PPM; (2) a claim for violation of Florida's Consumer Collection Practices Act ("FCCPA") against both Defendants; and (3) a claim for violation of the Fair Debt Collection Practices Act ("FDCPA") against both Defendants.  *See id.* ¶¶ 41–65.

Defendants removed the case to this Court on June 6, 2022.  (ECF No. 1).  On July 6, 2022, Defendants moved to dismiss all of the counts alleged in Plaintiff's Complaint for lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).  (ECF No. 13).  For the following reasons, the Court grants Defendants' Motion on Rule 12(b)(1) grounds, namely that Plaintiff does not adequately allege concrete injury as required by Article III.[2]

## II.    LEGAL STANDARD

Article III grants federal courts the power to decide only actual cases and controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992).  One component of Article III's limited grant is "standing," or the question of whether a "litigant is entitled to have the court decide the

---

[2]  As a result, the Court does not reach Defendant's 12(b)(6) arguments.  *See Hitt v. City of Pasadena*, 561 F.2d 606 (5th Cir. 1977) ("Ordinarily, where both these grounds for dismissal apply, the court should dismiss only on the jurisdictional ground under Fed.R.Civ.P. 12(b)(1), without reaching the question of failure to state a claim under Fed.R.Civ.P. 12(b)(6).").

merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("[S]tanding imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III."). Just as with subject-matter jurisdiction, standing is a threshold inquiry in every federal case. *Id.* A plaintiff seeking to adjudicate a lawsuit in federal court must therefore demonstrate standing by showing three elements: (1) he has suffered an injury in fact; (2) the injury is "fairly traceable to the challenged conduct of the defendant"; and (3) the injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

An injury in fact is "an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (citing *Lujan*, 504 U.S. at 560) (internal citations omitted). Thus, to confer Article III standing, an injury "must be real, and not abstract." *Spokeo*, 578 U.S. at 340 (internal citations omitted). Generally, "tangible injuries qualify as concrete." *Trichell*, 964 F.3d at 997. Yet intangible injury may be sufficiently concrete where "history and the judgment of Congress" reveal an intent to confer standing under the statutory scheme before the Court. *See Spokeo,* 578 U.S. at 340; *Trichell*, 964 F.3d at 997–1005.

## III.    DISCUSSION

Defendants argue that Plaintiff fails to allege a concrete Article III injury as he refused to pay his alleged debt, and he therefore lacks standing to bring his claims. Mot. at 6–7. Plaintiff seems to concede that he did not suffer "tangible" injury, and instead argues that he suffered "intangible" statutory injury solely as a result of Defendants' purported statutory violations, thereby satisfying Article III's injury requirement. Resp. at 3–6.

In *Trichell v. Midland Credit Mgmt., Inc.*, the Eleventh Circuit assessed whether two FDCPA plaintiffs had suffered Article III injury where the plaintiffs received "misleading" debt collection letters, yet where neither plaintiff was <u>actually</u> misled into payment. *See generally* 964 F.3d 990 (11th Cir. 2020).  First, the Court concluded the debt collection letters did not cause tangible injury, as neither plaintiff wasted money or time in paying or responding.  *Id.* at 997.

Next, the Court examined plaintiffs' "intangible injuries" (informational injury[3] and the risk of being misled) by assessing whether those injuries, as alleged under the FDCPA, closely resemble traditional common law actions in American or English jurisprudence.  *See id.*  Here, the Court concluded that even under the most analogous common law actions—fraudulent and negligent misrepresentation—"a showing of justifiable reliance and actual damages" is required. *Id.* at 998 (quoting *Prosser & Keeton on the Law of Torts* § 110 (5th ed. 1984)).

Finally, the Court assessed whether Congress intended to elevate "to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law."  *Id.* (citations omitted).  Again, the Court found intangible injuries disfavored in the FDCPA context where the statute was not intended to protect individuals "from receiving in the mail a misleading communication that fails to mislead" (i.e., because plaintiffs were not misled into payment).  *Id.* at 999.  The Court also explained how the formulation of the statute's private right of action— permitting recovery of "any *actual* damage sustained . . . as a result of" the FDCPA violation and "such additional damages as the court may allow"—revealed Congress's view of intangible injury as "an 'additional' remedy for plaintiffs suffering '*actual* damage' caused by a statutory violation."

---

[3]  "Trichell and Cooper also seek to base standing on a claimed informational injury. They contend that the FDCPA gives them a right to receive truthful communications from debt collectors, which makes any violation of that right qualify as a concrete injury." *Id.* at 1003.

*Id.* at 1000 (citing 15 U.S.C. § 1692(a) (emphases added)).  The Court thus concluded that neither of plaintiffs' intangible injuries supported Article III standing under the FDCPA.  *Id.* at 1000–05.

In light of the Eleventh Circuit's holding in *Trichell*, Plaintiff's claims in the instant case fails to allege a cognizable injury which confer Article III standing.  Plaintiff does not allege tangible injury, as he admits that he did not pay when PPM and Oxygen sent him collection notices. Compl.  ¶¶ 23–25, Resp. at 3–6.  To the extent that Plaintiff alleges damages whatsoever in his FDCPA count, he asserts that Defendants' mere violations of the statute "directly and proximately caused . . . damages to Plaintiff."  Compl. ¶¶ 63–64.  Yet the Eleventh Circuit expressly concluded that such statutory injuries under the FDCPA, whether alleged as informational harm or a "risk of being misled," are insufficient to confer standing.  *See* 964 F.3d at 1005.

The same analysis applies to Plaintiff's FCCPA claim: (1) as described in *Trichell*, the analogous common law actions of fraudulent and negligent misrepresentation require "a showing of justifiable reliance and actual damages," *see id.* at 998; and (2) the FCCPA was intended to "protect Florida citizens from certain debt collection practices that involve fraud, harassment, threats, and other activities." [4]  Plaintiff advances no argument which convinces the Court that the statute also intended to protect Floridians from "receiving in the mail a misleading communication that fails to mislead," *see* 964 F.3d at 999, particularly where the statute explicitly states that, in its interpretation, "great weight shall be given to the interpretations of . . . the federal courts relating to the federal Fair Debt Collection Practices Act."  Fla. Stat. §559.77(5).

Finally, Plaintiff's FDUTPA claim fails on the same common law analysis (as the closest analogous actions under Plaintiff's theory remain the same), and Plaintiff again has advanced no

---

[4]  Fla. S. Comm. On Judiciary, CS for SB 94 (2001) Post-Meeting Staff Analysis 1 (Mar. 6, 2001), https://www.flsenate.gov/Session/Bill/2001/94/Analyses/20010094SCM_2001s0094.cm.pdf.

evidence of legislative intent to protect individuals who were *not actually misled* by "deceptive act[s] or practice[s]" under the statute. *See, e.g.*, Fla. Stat. §501.211(2) ("In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover *actual* damages, plus attorney's fees and court costs.") (emphasis added).

In sum, Plaintiff's inability to allege concrete injury under any of his three causes of action renders him without standing to bring his claims. The Court therefore dismisses his Complaint on Rule 12(b)(1) grounds and declines to reach Defendants' Rule 12(b)(6) arguments.

## IV.    CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (ECF No. 13) is GRANTED. The above-captioned action is DISMISSED WITH PREJUDICE. The Clerk of Court is instructed CLOSE this case. All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 31st day of October, 2022.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record